# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| RONALD L. SUTTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:18-cv-00063-CDP |
| | ) | |
| DUNKLIN COUNTY JAIL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court upon review of the amended complaint filed by plaintiff Ronald L. Sutton. (Docket No. 15). Due to deficiencies in the original complaint, the Court previously directed plaintiff to file an amended complaint within twenty-one days. Plaintiff has duly filed his amended complaint, which is now subject to review pursuant to 28 U.S.C. § 1915(e)(2)(B). For the reasons discussed below, the Court will dismiss the claims against defendant Dunklin County Jail. The Court will also dismiss the official capacity claims against defendants Allen Oliver, Marissa Wilson, Bob Holder, and Pam Buchanan. However, the Court will direct the Clerk of Court to issue process upon defendants Oliver, Wilson, Holder, and Buchanan in their individual capacities.

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but "does not accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## The Amended Complaint

At the time the events in the complaint allegedly occurred, plaintiff was incarcerated at the Dunklin County Jail in Kennett, Missouri. He brings this action pursuant to 42 U.S.C. § 1983. Plaintiff names the following defendants in his amended complaint: Allen Oliver; Marissa Wilson; Bob Holder; Pam Buchanan; and the Dunklin County Jail. Defendants are sued in both their individual and official capacities.

Plaintiff states that defendant Oliver is a correctional officer at the Dunklin County Jail. (Docket No. 15 at 4). On November 8, 2015, plaintiff alleges that Officer Oliver pushed and shoved him down the hallway to the booking room of the jail. (Docket No. 15 at 8). Plaintiff further claims that Officer Oliver slammed him against the wall next to the drunk tank. While this occurred, plaintiff states that Officer Oliver cursed him, called him everything "[b]ut [a] [c]hild of God," and used racial slurs.

Officer Oliver ordered plaintiff into the drunk tank, and instructed him to go to the back, face the wall, and place his hands over his head. Plaintiff complied with these directions. He states that after standing with his back to Officer Oliver for a few seconds, he heard the word "bi—h." At that point, plaintiff alleges that Officer Oliver deployed a Taser against his spinal area. The electrical shock caused plaintiff to fall backwards, "hitting the floor very hard." Plaintiff states that he injured his back during this incident. He claims to have trouble walking on his left leg, to have numbness in his hands and feet, and to have two bulging disks as a result of this incident.

Plaintiff states that defendant Holder is the sheriff of Dunklin County and that defendant Buchanan is a deputy sheriff. (Docket No. 15 at 2-3). On the evening of November 8, 2015, after allegedly being tased by Officer Oliver, plaintiff had a "short visit" with Deputy Buchanan.

According to plaintiff, Deputy Buchanan told him that Sheriff Holder had been informed of the incident and would retrieve the security camera footage. Plaintiff asked for medical attention because his back was hurting from the incident with Officer Oliver. Deputy Buchanan told plaintiff that Sheriff Holder said "that he doesn't care about you or your pains and that [you're] not going on a d—n medical…Lay the [f]—k down and shut up before [you] come up missing." Plaintiff further claims that Deputy Buchanan "was on the [scene]" when Officer Allen tased him in the drunk tank. He states that Deputy Buchanan could have stopped the alleged assault but "turned her head the other way."

Plaintiff alleges that he attempted to file grievances but that Sheriff Holder denied his request and told his deputies to do the same. He also states that he heard Sheriff Holder say "F—k that n—r." On November 9, 2015, plaintiff states that Sheriff Holder was supposed to come see him, but did not. He states that he overheard Sheriff Holder talking in the booking room, and called for him. Plaintiff alleges that Sheriff Holder told him he did not want to talk "and to die [slowly]." He states that Sheriff Holder denied him medical treatment and kept him in the drunk tank for fifteen days. (Docket No. 15 at 14).

On December 9, 2015, plaintiff states that he was released from the Dunklin County Jail. He was re-incarcerated at the Dunklin County Jail on August 10, 2016.

Plaintiff states that defendant Wilson is the night supervision officer at Dunklin County Jail. (Docket No. 15 at 4). On October 1, 2016, he claims he was handcuffed to the booking room desk. (Docket No. 15 at 9). Officer Wilson walked over to him and began cursing him out. This included using language that plaintiff perceived as discriminatory towards black Americans. Plaintiff alleges that Officer Wilson "pushed" him to the floor while he was still handcuffed to the desk. While he was on the floor, he states that Officer Wilson "began to push and swing" at

him. Plaintiff claims that Officer Wilson was about to kick him in the face when he yelled "What are you doing?" and told her that this would be on the booking room camera. Subsequently, Officer Wilson placed plaintiff in a padded cell, allegedly to "cover up what she had done."

Plaintiff claims that the alleged assaults and subsequent denial of medical treatment has caused him numbness in his hands and feet, lower and upper back issues, "permanent spinal pains," and two bulging disks. He asserts that the injuries he suffered while at the Dunklin County Jail will cause him pain for the rest of his life. (Docket No. 15 at 16). Accordingly, he is seeking $88 million in punitive damages. (Docket No. 15 at 15).

## Discussion

Plaintiff's complaint contains claims of excessive force, denial of medical care, failure to intervene, and supervisor liability. The defendants are sued in both their individual and official capacities. Having carefully reviewed and liberally construed plaintiff's allegations, and for the reasons discussed below, the Court must dismiss plaintiff's claims against defendant Dunklin County Jail. The Court must also dismiss the official capacity claims against defendants Allen Oliver, Marissa Wilson, Bob Holder, and Pam Buchanan. However, the Court will direct the Clerk of Court to issue process upon defendants Oliver, Wilson, Holder, and Buchanan in their individual capacities.

### A. Defendant Dunklin County Jail

Plaintiff's claims against defendant Dunklin County Jail must be dismissed. The Dunklin County Jail is a county jail, and "county jails are not legal entities amenable to suit." *Owens v. Scott Cty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003). *See also Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992) (stating that "departments or subdivisions" of local government are not "juridical entities suable as such"); and *De La Garza v. Kandiyohi Cty. Jail*,

18 Fed. Appx. 436, 437 (8th Cir. 2001) (affirming district court dismissal of county jail and sheriff's department as parties because they are not suable entities).

Even if Dunklin County is substituted as the proper party defendant, plaintiff has still failed to state a claim for county liability.

A local governing body can be sued directly under § 1983. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). Liability may attach if the constitutional violation is the result of (1) an official policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise. *Mick v. Raines*, 883 F.3d 1075, 1089 (8th Cir. 2018). Thus, there are three ways in which a plaintiff can demonstrate the liability of a municipal entity.

First, a plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). *See also Russell v. Hennepin Cty.*, 420 F.3d 841, 847 (8th Cir. 2005) ("A policy is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible…for establishing final policy with respect to the subject matter in question"). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id*. at 390.

Alternatively, a plaintiff can establish a claim of liability based on "custom." In order to do so, the plaintiff must demonstrate:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013). Finally, a plaintiff can establish municipal liability by showing a deliberately indifferent failure to train or supervise. In order to do so, the plaintiff must demonstrate a "pattern of similar constitutional violations by untrained employees." *S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Plaintiff's complaint does not contain any allegations referencing an unconstitutional policy or custom, or state that any policy or custom caused the constitutional violations of which he complains. Furthermore, he does allege a pattern of constitutional violations of untrained employees sufficient to state a claim that the county was deliberately indifferent in failing to train or supervise.

Rather, plaintiff alleges that county liability stems from the fact that the individual defendants are employed by the Dunklin County Jail. However, "a municipality cannot be held liable solely because it employs a tortfeasor." *Monell*, 436 U.S. at 691. In other words, a municipality cannot be held liable under § 1983 on a theory of respondeat superior. *A.H. v. St. Louis Cty., Mo.*, 891 F.3d 721, 728 (8th Cir. 2018). Instead, as noted above, a plaintiff suing a local governing body must demonstrate an unconstitutional official policy, unofficial custom, or a failure to train or supervise. *See Marsh v. Phelps Cty.*, No. 17-1260, 2018 WL 3863923, at *4 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those

based on a theory of inadequate training, which is an extension of the same"). Plaintiff has alleged no facts pertaining to an official policy, an unofficial custom, or a failure to train, and has therefore failed to state a claim for municipal liability. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights). Therefore, the claims against defendant Dunklin County Jail must be dismissed.

### B. Official Capacity Claims Against Defendants Oliver, Wilson, Holder, and Buchanan

Plaintiff's official capacity claims against defendants Oliver, Wilson, Holder, and Buchanan must be dismissed. A suit brought against a state official in his or her official capacity pursuant to § 1983 is not a suit against the official, but rather a suit against the official's office. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). In other words, the real party in interest in an official-capacity suit is not the named official, but the governmental entity. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). *See also Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) ("A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent"). Accordingly, a plaintiff suing a public employee in his or her official capacity "sues only the public employer and therefore must establish the municipality's liability for the alleged conduct." *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016).

Defendants are employees of the Dunklin County Jail and the Dunklin County Sheriff's Department. A suit against a person in his or her official capacity is treated as a suit against that person's employer. Neither a jail nor a sheriff's department is a suable entity under § 1983. *See Owens*, 328 F.3d at 1027; *Ketchum,* 974 F.2d at 82; and *De La Garza*, 18 Fed. Appx. at 437.

Even if Dunklin County were substituted as the employer, the claim still fails. As discussed above, in order to establish municipal liability, plaintiff must allege facts showing that the county has an unconstitutional policy, unofficial custom, or has failed to train or supervise its employees. *See Mick*, 883 F.3d at 1089. Plaintiff has not alleged facts regarding any policy, custom, or failure to train, and has therefore failed to establish the county's liability. Therefore the claims against defendants Oliver, Wilson, Holder, and Buchanan in their official capacities must be dismissed.

### C. Defendants Oliver and Wilson

Plaintiff's excessive force claims against defendants Oliver and Wilson in their individual capacities are sufficient for purposes of initial review. Plaintiff states that he is a convicted and sentenced state prisoner. (Docket No. 15 at 2). As such, his excessive force claims are governed by the Eighth Amendment. *See Burns v. Eaton*, 752 F.3d 1136, 1138 (8th Cir. 2014).

Pursuant to the Eighth Amendment, the "unnecessary and wanton infliction of pain" constituting cruel and unusual punishment is forbidden. *Hudson v. McMillan*, 503 U.S. 1, 9-10 (1992). When a prison official is accused of using excessive physical force in violation of the Eighth Amendment, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017). *See also Ward v. Smith*, 844 F.3d 717, 721 (8th Cir. 2016) ("Because the use of force is sometimes required in prison settings, guards are liable only if they are completely unjustified in using force, i.e., they are using it maliciously and sadistically"). The factors to be considered in determining whether force was used in good faith include "the need for the application of force, the relationship between the need and the amount

of force that was used, and the extent of injury inflicted." *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

As to defendant Oliver, plaintiff alleges that Oliver pushed and shoved him down a hallway, slammed him against the wall, and then tased him in the back, causing him to fall to the floor. At the time Officer Oliver deployed the Taser, plaintiff was facing the wall, had his hands over his head, and was complying with directions. There is no indication that Officer Oliver was attempting to maintain or restore discipline. Furthermore, plaintiff states that Officer Oliver was cursing at him, using racial slurs, and called him a "b—h" before using the Taser. While Officer Oliver's alleged verbal abuse is not in and of itself actionable,[1] it lends itself to an inference that Officer Oliver was using force inappropriately. That is, Officer Oliver's use of curses and slurs supports plaintiff's contention that Officer Oliver's use of force was animated by malice, rather than a proper penal purpose. At this stage, plaintiff's allegations must be accepted as true and viewed in a light most favorable to him. *See Dadd v. Anoka Cty.*, 827 F.3d 749, 754 (8th Cir. 2016). Accordingly, the Clerk of Court will be directed to serve process upon defendant Oliver in his individual capacity on plaintiff's claim of excessive force.

As to defendant Wilson, plaintiff alleges that Wilson knocked him to the floor while he was handcuffed to a desk. While plaintiff was on the floor, Officer Wilson began to push and swing at him. Furthermore, plaintiff states Officer Wilson cursed at him and used discriminatory language. As with Officer Oliver, Officer Wilson's language lends credence to plaintiff's claim that the use of force was excessive and not done to restore or maintain discipline. Moreover, plaintiff notes that he was handcuffed, meaning that he was not presenting a threat to Officer

---

[1] *See Turner v. Mull*, 784 F.3d 485, 492 (8th Cir. 2015) ("Generally, mere verbal threats made by a state-actor do not constitute a § 1983 claim"); and *King v. Olmsted Cty.*, 117 F.3d 1065, 1067 (8th Cir. 1997) ("Fear or emotional injury which results solely from verbal harassment or idle threats is generally not sufficient to constitute an invasion of an identified liberty interest").

Wilson when she knocked him to the floor and began to push and swing at him. Accepting these allegations as true, plaintiff has alleged sufficient facts to survive initial review under § 1915(e)(2)(B). Accordingly, the Clerk of Court will be directed to serve process upon defendant Wilson in her individual capacity on plaintiff's claim of excessive force.

### D. Defendant Holder

Plaintiff's claim of deliberate indifference to medical needs against defendant Holder is sufficient for purposes of initial review.

The government has an obligation to provide medical care to those whom it is punishing by incarceration. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). To demonstrate constitutionally inadequate medical care, the inmate must show that a prison official's conduct amounted to deliberate indifference. *Dulany v. Carnahan*, 132 F.3d 1234, 1237-38 (8th Cir. 1997). Proving deliberate indifference requires a showing that the prison official "knew of and disregarded a serious medical need." *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 795 (8th Cir. 2006). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). Deliberate indifference can include the intentional denial or delay of access to medical care. *Vaughn v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995).

Plaintiff alleges that after being tased by Officer Oliver on November 8, 2015, he was visited by Deputy Buchanan. According to plaintiff, Deputy Buchanan told him that Sheriff Holder had been advised of the incident and would secure the surveillance footage. Plaintiff states that he requested medical assistance because his back was hurting. However, Deputy Buchanan allegedly told him that Sheriff Holder did not care about his pain and that plaintiff was

11

not going to medical. Plaintiff claims that his back was badly swollen and he could hardly move. Nevertheless, Sheriff Holder refused to allow him to receive medical care, allegedly told his deputies to refuse his requests, and kept plaintiff in the drunk tank for fifteen days. When plaintiff overheard Sheriff Holder talking and called for help, Sheriff Holder told plaintiff he did not want to talk to him and that plaintiff could "die [slowly]." The inference here is that Sheriff Holder knew plaintiff was injured and continued to do nothing.

Accepting these allegations as true, plaintiff has sufficiently alleged a claim of deliberate indifference to medical needs that is sufficient for purposes of § 1915(e)(2)(B) review. He has alleged that he had a serious medical need, to wit: that he had been tased; that he had fallen to the floor; that his back was swollen; and that he could barely move. He has further alleged that Sheriff Holder knew of this condition, but intentionally denied him access to medical care. Accordingly, the Clerk of Court will be directed to serve process upon defendant Holder in his individual capacity as to plaintiff's claim of deliberate indifference to his medical needs.

Plaintiff has also alleged that Sheriff Holder was "charged" with taking care of the deputies and the everyday operation of the jail. To the extent that plaintiff is attempting to assert supervisory liability against Sheriff Holder, he has failed to state a claim.

"Government officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). Thus, in order to maintain an action for training or supervisory liability, the plaintiff must show that the failure to train or supervise caused the injury. *Moore v. City of Desloge, Mo.*, 647 F.3d 841, 849 (8th Cir. 2011). *See also Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) ("[A] supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation"). The standard used

to determine liability for failure to train is deliberate indifference. *Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 673 (8th Cir. 2007). "A supervisor may be liable under § 1983 if he (1) received notice of a pattern of unconstitutional acts committed by a subordinate, and (2) was deliberately indifferent to or authorized those acts." *Rogers v. King*, 885 F.3d 1118, 1122 (8th Cir. 2018).

Aside from generally asserting Sheriff Holder's responsibility for the jail and his deputies, plaintiff does not provide any facts to support supervisor liability. He claims that Sheriff Holder learned of the incident with Officer Oliver after it occurred. He does not, however, allege that Officer Oliver's actions were a result of Sheriff Holder's failure to train or supervise Oliver. There is no allegation that Sheriff Holder had received notice of a pattern of such acts by other officers or deputies. There is also no indication that Sheriff Holder authorized any such acts. Such factual allegations are necessary to support a claim of supervisor liability. A conclusory statement that Sheriff Holder has overall responsibility does not suffice. Accordingly, plaintiff's claim against Sheriff Holder based on supervisor liability must be dismissed.

### E. Defendant Buchanan

Plaintiff's claims against defendant Buchanan for deliberate indifference to medical needs and failure to intervene are sufficient for purposes of initial review.

As noted above, in order to demonstrate constitutionally inadequate medical care, the inmate must show that a prison official's conduct amounted to deliberate indifference. *Dulany*, 132 F.3d at 1237-38. Proving deliberate indifference requires a showing that the prison official "knew of and disregarded a serious medical need." *Phillips*, 437 F.3d at 795. "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."

*Coleman*, 114 F.3d at 784. Deliberate indifference can include the intentional denial or delay of access to medical care. *Vaughn*, 49 F.3d at 1346.

Plaintiff alleges that he had a conversation with Deputy Buchanan following the Taser incident with Officer Oliver. At that time, plaintiff told Deputy Buchanan that he required medical attention. He stated that his back had been injured after Officer Oliver had tased him in the back, causing him to fall to the floor. Instead of responding to this request, plaintiff alleges that Deputy Buchanan told him that Sheriff Holder did not care about his pain, and that he was not going to medical. Moreover, according to plaintiff, Deputy Buchanan told him to "Lay the [f]—k down and shut up" before he "came up missing." Accepting these allegations as true, plaintiff made Deputy Buchanan aware of a serious medical need, and Deputy Buchanan intentionally denied him access to medical care. Accordingly, the Clerk of Court will be directed to serve process upon defendant Buchanan in her individual capacity as to plaintiff's claim of deliberate indifference to his medical needs.

Plaintiff also alleges that Deputy Buchanan failed to intervene on November 8, 2015, when Officer Oliver ordered him into the drunk tank and tased him in the back. "A prison official acts with deliberate indifference to an inmate's safety when the official is present at the time of an assault and fails to intervene or otherwise act to end the assault." *Williams v. Mueller*, 13 F.3d 1214, 1216 (8th Cir. 1994). Under § 1983, a correctional officer can be held liable for failing to intervene in another officer's constitutional violation. *See Putman v. Gerloff*, 689 F.2d 415, 423 (8th Cir. 1981) (determining that a deputy could be held "jointly liable for failing to intervene if a fellow officer…was using excessive force and otherwise was unlawfully punishing the prisoner"); and *Buckner v. Hollins*, 983 F.2d 119, 121-22 (8th Cir. 1993) (determining that

state corrections officer had a duty to intervene on behalf of inmate being assaulted by a county corrections officer).

Plaintiff states that Deputy Buchanan "was on the [scene] when the ugly and cruel excessive [f]orce took place," and that she could have stopped the assault but instead "turned her head the other way…" Accepting these allegations as true, plaintiff's claim that Deputy Buchanan failed to intervene is sufficient for purposes of initial review. He has asserted that an incident of excessive force took place; that Deputy Buchanan was there when it happened; and that Deputy Buchanan did not intervene or otherwise attempt to stop the incident from occurring. Accordingly, the Clerk of Court will be directed to serve process upon defendant Buchanan in her individual capacity as to plaintiff's failure to intervene claim.

### F. Plaintiff's Motion to Appoint Counsel

Plaintiff has filed a motion to appoint counsel. (Docket No. 16). "A pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case." *Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998). *See also Ward*, 721 F.3d at 942 ("In civil cases, there is no constitutional or statutory right to appointed counsel…Rather a court may request an attorney to represent any person unable to afford counsel"). When determining whether to appoint counsel for an indigent litigant, the Court considers relevant factors, such as the complexity of the case, the ability of the pro se litigant to investigate the facts, the existence of conflicting testimony, and the ability of the pro se litigant to present his or her claim. *Phillips*, 437 F.3d at 794.

After reviewing these factors, the Court finds that the appointment of counsel is not warranted at this time. Plaintiff has demonstrated, up to this point, that he can adequately present his claims to the Court. Additionally, neither the factual nor legal issues in this case appear to be

complex. The Court will entertain future motions for appointment of counsel as the case progresses.

G. **Plaintiff's Motion for Extension of Time to Pay Initial Partial Filing Fee**

Plaintiff has filed two motions requesting an extension of time to pay the initial partial filing fee of $1.75. (Docket No. 17; Docket No. 18). He asks for an additional thirty days in which to make the payment. As of August 16, 2018, however, plaintiff has paid his initial partial filing fee. As such, the Court will deny plaintiff's motions as moot.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for appointment of counsel (Docket No. 16) is **DENIED** at this time.

**IT IS FURTHER ORDERED** that plaintiff's motions for an extension of time in which to pay the initial partial filing fee (Docket No. 17; Docket No. 18) are **DENIED AS MOOT** as plaintiff has made the payment.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue upon defendants Allen Oliver and Marissa Wilson in their individual capacities as to plaintiff's claims of excessive force.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue upon defendants Bob Holder and Pam Buchanan in their individual capacities as to plaintiff's claims of deliberate indifference to his medical needs.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue upon defendant Pam Buchanan in her individual capacity as to plaintiff's claim of failure to intervene.

**IT IS FURTHER ORDERED** that plaintiff's claims against defendants Allen Oliver, Marissa Wilson, Bob Holder, and Pam Buchanan in their officials capacities are **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that plaintiff's remaining federal claims against defendants Allen Oliver, Marissa Wilson, Bob Holder, and Pam Buchanan in their individual capacities are **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that plaintiff's claims against defendant Dunklin County Jail are **DISMISSED** without prejudice.

**IT IS HEREBY CERTIFIED** that an appeal from this partial dismissal would not be taken in good faith.

A separate order of partial dismissal will be entered herewith. *See* 28 U.S.C. § 1915(e)(2)(B).

Dated this 10th day of September, 2018.

*Catherine D. Perry*
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE