UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| RONALD LAMONT SUTTON, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 1:18 CV 63 CDP |
| PAM BUCHANAN, et al., | ) | |
| Defendants. | ) | |

## **MEMORANDUM AND ORDER**

Missouri state prisoner Ronald Lamont Sutton brings this *pro se* action under 42 U.S.C. § 1983 alleging that several Dunklin County Jail officials violated his constitutional rights when he was pretrial detainee at the jail and later as a convicted prisoner at the jail. Presently before the Court are several motions for summary judgment filed by the parties. Because genuine issues of material fact exist on all of Sutton's pending claims, I will deny the motions and set the case for trial. I will also appoint trial counsel to represent Sutton for the remainder of the proceedings in this case.

**Background**

In his verified amended complaint, Sutton alleges that when he was a pretrial detainee at Dunklin County Jail on November 8, 2015, defendant Allen Edwards, a correctional officer at the jail, forcibly shoved him through a hallway to the

booking room, slammed him into a wall, and deployed a taser to his back despite Sutton's compliance with his orders to face the wall and place his hands above his head. Sutton claims that the electrical shock caused him to fall to the floor backwards, which injured his back. Sutton claims that defendant Pam Buchanan, deputy sheriff, was present during Edwards' assault on him, but looked away and did nothing to prevent it. Sutton asked Buchanan for medical treatment, but she told him to lay down and shut up before he came up "missing." Sutton was held in the drunk tank thereafter. Sutton alleges that the following day, he called to defendant Sheriff Bob Holder, who was nearby, and asked for help. Sutton claims that Holder told him that he did not want to talk and to die slowly. Holder likewise denied Sutton medical treatment and kept him in the drunk tank for fifteen days. Sutton claims that he has bulging discs in his back as a result of the assault, continues to have numbness in his hands and feet, and has difficulty walking on his left leg.

Evidence before the Court shows that on December 9, 2015, Sutton pleaded guilty to the charge for which he was being held and was sentenced to probation. (ECF 24.) He was released from Dunklin County Jail that same date.

Sutton returned to custody at Dunklin County Jail in August 2016, having violated his probation. In his verified amended complaint, Sutton claims that on

October 1, 2016, defendant Marishia Wheeler,[1] a night supervision officer at the jail, pushed him to the floor while he was handcuffed to a desk in the booking room and "began to push and swing" at him. Sutton contends that Wheeler was about to kick him in the face when he yelled, "What are you doing?" Wheeler then stopped the assault and placed him in a padded cell.

Sutton contends that throughout these encounters, each defendant cursed at or used threatening language toward him and used racial slurs.

Defendants dispute Sutton's version of events. Edwards and Wheeler contend that any force used during their respective encounters with Sutton was *de minimis* and reasonably necessary to maintain security and control given that Sutton was recalcitrant and ignoring orders. Buchanan contends that she was not in the area during Edwards' alleged assault in November 2015 and thus could not have intervened. Holder claims that he did not have any contact with Sutton at the Dunklin County Jail in November 2015. All defendants move for summary judgment on the merits of the claims. Edwards and Wheeler also contend that they are entitled to qualified immunity. In several *pro se* motions for summary judgment or "for a memorandum and order," Sutton argues that he is entitled to relief on his claims.

---

[1] In her motion for summary judgment, Wheeler avers that her surname is now Sandefur. For ease of reference and consistency among the pleadings and other documents in the case, I will continue to refer to her as "Wheeler" in this memorandum.

## Discussion

I may grant summary judgment if the information before the Court shows that there are no genuine issues of material fact in dispute and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party has the burden of proof to set forth the basis of their motion, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and I must view all facts and inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). Once the moving party has met their burden, the nonmoving party may not rest on the allegations in their pleadings, but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). A verified complaint is equivalent to an affidavit for summary judgment purposes. *Hanks v. Prachar*, 457 F.3d 774, 775 (8th Cir. 2006) (per curiam). At the summary judgment stage, I do not weigh the evidence and decide the truth of the matter, but rather determine if there is a genuine issue for trial. *Anderson*, 477 U.S. at 249.

A pretrial detainee's claims of excessive use of force and deliberate indifference are analyzed under the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment's prohibition of cruel and unusual punishment. *Holden v. Hirner*, 663 F.3d 336, 340-41 (8th Cir. 2011). The substance of the

analysis is largely the same. *Id.* at 341. The Constitution affords greater protection to a pretrial detainee, however, compared to a convicted inmate in the sense that "[d]ue process requires that a pretrial detainee not be punished." *Bell v. Wolfish,* 441 U.S. 520, 535 n.16 (1979). The Constitution shields pretrial detainees "not only from 'cruel and unusual punishments,' but from *any* punishment whatsoever." *Walton v. Dawson*, 752 F.3d 1109, 1117 (8th Cir. 2014) (citations omitted) (emphasis in *Walton*). The Eighth Amendment applies after a formal adjudication of guilt. *Id.*

"The Eighth Amendment bars correctional officers from imposing unnecessary and wanton pain on inmates, regardless of whether there is evidence of any significant injury." *Johnson v. Blaukat,* 453 F.3d 1108, 1112 (8th Cir. 2006) (citing *Hudson v. McMillian,* 503 U.S. 1, 9 (1992)). "Officers may reasonably use force in a good-faith effort to maintain or restore discipline but may not apply force maliciously and sadistically to cause harm." *Id.* (internal quotation marks and citation omitted). The test for reasonableness or the good-faith application of force depends on the following:

> whether there was an objective need for force, the relationship between any such need and the amount of force used, the threat reasonably perceived by the correctional officers, any efforts by the officers to temper the severity of their forceful response, and the extent of the inmate's injury.

*Treats v. Morgan,* 308 F.3d 868, 872 (8th Cir. 2002); *see also Ward v. Smith*, 844

F.3d 717, 721 (8th Cir. 2016). A prisoner may also assert an excessive-use-of-force claim against a correctional officer who knew or had reason to know another officer was using excessive force, and who had the opportunity to intervene to prevent the excessive use of force by her compatriot but failed to do so. *Livers v. Schenck*, 700 F.3d 340, 360 (8th Cir. 2012); *Putman v. Gerloff*, 639 F.2d 415, 423 (8th Cir. 1981). The question is whether the officer's inaction amounts to deliberate indifference to a substantial risk of serious harm to the prisoner. *Buckner v. Hollins,* 983 F.2d 119, 122 (8th Cir. 1993).

Finally, a jail official's intentional denial of or delayed access to medical care for a prisoner's serious injury constitutes unnecessary and wanton infliction of pain, giving rise to a claim of deliberate indifference to that prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). An objectively serious medical need or a deprivation of that need must be either obvious to a layperson or supported by medical evidence, like a physician's diagnosis. *Christian v. Wagner*, 623 F.3d 608, 613 (8th Cir. 2010); *Aswegan v. Henry,* 49 F.3d 461, 464 (8th Cir.1995). *See also Johnson v. Busby,* 953 F.2d 349, 351 (8th Cir. 1991) (stating that serious medical need exists only if "diagnosed by physician as requiring treatment, or . . . so obvious that even a layperson would easily recognize the necessity for a doctor's attention").

A.  November 2015 Incident – Defendants Edwards, Buchanan, and Holder

Edwards claims that Sutton disobeyed his order to line up for dinner on November 22, 2015, and that when he attempted to block Sutton from walking away and back into the pod toward his room, Sutton pushed him and grabbed onto a table to prevent Edwards from moving him. Edwards claims that upon removing Sutton from the pod, he helped Sutton "move a little faster" up the hallway because Sutton was walking slowly. Edwards claims that Sutton thereafter refused his orders to sit down and that when Sutton turned his back to him, he deployed the taser and Sutton fell to the floor. Edwards contends that he tased Sutton because Sutton was refusing orders and resisting commands of a correctional officer. Edwards then removed the taser prongs from Sutton's back, swabbed the area with alcohol, and placed band-aids where the prongs had entered Sutton's back. Both Edwards and Buchanan attest that Buchanan came into the hallway after Sutton fell to the floor. And Holder attests that he had no contact with Sutton in November 2015.

As summarized above, Sutton attests in his verified complaint that he complied with Edwards' orders, that Buchanan was in the area during the assault but deliberately looked away, and that Buchanan denied his request for medical treatment after he fell and complained of pain and injuries to his back. Still in pain the following day, he asked Holder for help, but Holder told him to die slowly.

- 7 -

Further, Sutton claims that defendants' unlawful conduct occurred on November 8 and 9, 2015, rather than November 22. These genuine issues of fact go to the heart of Sutton's claims and preclude summary judgment.

Assuming Sutton's version of events to be true (as I must), a reasonable jury can conclude that Sutton's constitutional rights were violated. I cannot decide as a matter of law that the force Edwards used was not excessive given the factual disputes about whether Sutton complied with Edwards' orders and whether the level of Sutton's alleged disobedience required the use of a taser. "[N]ot every instance of inmate resistance justifies the use of force." *Treats*, 308 F.3d at 873. *See also Walker v. Bowersox,* 526 F.3d 1186, 1188-89 (8th Cir. 2008) (trial worthy issue as to whether use of force to make inmate accept specific cell assignment was excessive when inmate initially resisted transfer but later complied, thereby removing any threat or need for force); *Johnson,* 453 F.3d at 1113 (summary judgment on excessive force claim improper where facts concerning the need, extent, and application of force were disputed in case involving inmate's initial refusal to comply with correctional officer's orders).

For these same reasons, Edwards is not entitled to qualified immunity as he claims. Edwards concedes in his motion for summary judgment that the right to be free from physical force when one is not resisting the police is a clearly established right. (ECF 79 at p.9.) He argues, however, that a prisoner's right to not be tased

is not clearly established when he is struggling with, resisting, or disobeying an officer and that, because such circumstances existed here, he is entitled to qualified immunity. As discussed above, genuine issues of material fact exist as to whether Sutton disobeyed Edwards' orders or complied with them, and the facts viewed most favorably to Sutton constitute a violation of clearly established law. *See Brown v. City of Golden Valley*, 574 F.3d 491, 499-500 (8th Cir. 2009) (citing *Hickey v. Reeder,* 12 F.3d 754, 757, 759 (8th Cir. 1993); *Treats*, 308 F.3d at 873). Edwards is therefore not entitled to qualified immunity.

These factual disputes also preclude summary judgment on Sutton's claim that Buchanan failed to intervene. Whether Buchanan was present during the assault, had an opportunity to intervene, and deliberately looked away are disputed factual issues that cannot be resolved on summary judgment. And, regardless, Buchanan presents no argument or evidence to counter Sutton's claim that she denied his request for medical treatment for his injured back as he lay on the floor in pain. Based on this disputed record, I cannot conclude as a matter of law that Sutton is entitled to no relief on his claims against Buchanan arising from the November 2015 incident. *See Buckner,* 983 F.2d at 122.

To the extent defendants argue that Sutton's injuries were no more than *de minimis* and that he has failed to provide any verifying medical evidence showing that a delay in medical treatment adversely affected his health, I note first that there

is no "significant injury" requirement to an excessive-use-of-force claim because, "[o]therwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Hudson*, 503 U.S. at 9. *See also Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010) (assault allegedly leaving plaintiff "with a bruised heel, back pain, and other injuries requiring medical treatment" sufficient to state Eighth Amendment claim.). Regardless, Sutton's claim that he suffered bulging discs in his back, numbness in his hands and feet, and difficulty walking on his left leg describes more than a *de minimis* injury caused by the alleged conduct. And further, Sutton has submitted medical records from the emergency department at Southeast Health dated February 2016 showing bulging discs of the lumbar spine confirmed by CT scan, as well as a primary diagnosis of "cervical and back pain with leg paresthesia and numbness from a fall and tazed [sic]" for which he was prescribed Norco and Flexeril. (ECF 26 at pp.6-9.) Whether and to what extent Buchanan's and/or Holder's alleged denial of or delay in providing medical treatment caused or had a detrimental effect on Sutton's medically documented back injury are matters to be decided by a jury.

B.  October 2016 Incident – Defendant Wheeler

Wheeler attests that on October 1, 2016, Sutton refused to comply with her orders to enter a cell in the booking area, that Sutton grabbed some handcuffs and

handcuffed one of his hands to a stool in the booking area to avoid being placed in the cell, and that Sutton resisted her attempts to unlock the handcuff by aggressively swinging his free hand in the air. Wheeler attests that Sutton fell off the stool while he was resisting her attempts to unlock the handcuff and that she was able to grab Sutton's hand and unlock the handcuff while he was on the floor. In his verified response (ECF 103), Sutton disputes Wheeler's facts, asserting instead that Wheeler pushed him off the stool while both of his hands were handcuffed to a desk, which caused injury to his neck and to his already injured back.[2] This factual dispute as to whether Sutton was fully restrained and whether Wheeler applied physical force to restore order or maliciously and sadistically for the purpose of causing harm precludes entry of summary judgment on the claim. *See Estate of Davis by Ostenfeld v. Delo*, 115 F.3d 1388 (8th Cir. 1997) (correctional officer's striking of restrained prisoner and smashing him against the floor can constitute excessive use of force).

Further, as with Edwards, Wheeler is not entitled to qualified immunity on Sutton's claim of excessive use of force. At the time of the alleged conduct, the law was clearly established that a restrained prisoner has a right to be free from physical force in the absence of his resistance to law enforcement officials. *See Jackson v. Stair*, 944 F.3d 704, 712-13 (8th Cir. 2019). And, as discussed above,

---

[2] I reject Wheeler's contention that I cannot consider this response because Sutton claims he prepared it the same day her motion for summary judgment was filed.

there are disputed facts regarding the extent to which Sutton was restrained and whether Wheeler intentionally pushed him off the stool while he was restrained for the purpose of causing him harm. When viewed in a light most favorable to Sutton, the facts alleged by Sutton constitute a violation of clearly established law. Wheeler's claim of qualified immunity is denied.

Wheeler also contends that Sutton's claim of excessive use of force cannot proceed against her because Sutton failed to exhaust his administrative remedies on the claim. In support, Wheeler submits the Dunklin County Jail grievance procedure and the affidavit of Nicole Green, jail administrator, attesting that of the thirty-one grievances Sutton filed from August 2016 through November 2016, none relates to Wheeler's alleged use of force as claimed in this case. (ECF 99-2.) In his verified response, Sutton avers that he did in fact file a grievance and the "proper paperwork" on the matter but that defendants are withholding this evidence. "A record keeper's declaration that a prisoner did not exhaust a grievance is insufficient to establish non-exhaustion as a matter of law when the prisoner makes sworn assertions that he took the necessary steps to exhaust." *Boyd v. Doe*, 746 F. App'x 599, 600 (8th Cir. 2018) (citing *Conner v. Doe*, 285 F. App'x 304, 304 (8th Cir. 2008)). The self-serving nature of Sutton's verified response "does not serve to make such evidence inherently infirm" at the summary judgment stage. *Stewart v. Rise, Inc.*, 791 F.3d 849, 860 (8th Cir. 2015).

Accordingly, I may not discount Sutton's verified statement that he satisfied the grievance requirements for this claim, and Wheeler's motion for summary judgment on this basis is denied.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motions for summary judgment [78] [97] are **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff's motions for summary judgment and for entry of orders [75] [94] [103] are **DENIED.**

**IT IS FURTHER ORDERED** that this case will be set for trial after the current national emergency because of the COVID 19 pandemic has ended.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 6th day of April, 2020.