**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| RONALD LAMONT SUTTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:18-CV-00063-JAR |
| | ) | |
| PAM BUCHANAN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants Bob Holder, Allen Edwards, and Pam Buchanan's Renewed Motion for Summary Judgment (Doc. 163) and Defendant Marishia (Wheeler) Sandefur's Renewed Motion for Summary Judgment. (Doc. 170).[1] The Court will consider both motions in the same Memorandum and Order because they concern related issues. For the reasons discussed below, both motions will be granted.

**I.      BACKGROUND**

Plaintiff brings this action under 42 U.S.C. § 1983 alleging two incidents of excessive use of force at Dunklin County Adult Detention Center ("Dunklin County") on November 22, 2015 (the "November 2015 Incident")[2] and October 1, 2016 (the "October 2016 Incident") respectively. Plaintiff filed his initial complaint on March 19, 2018 (Doc. 1) and an Amended Complaint on July 11, 2018. (Doc. 15). Performing an initial review of Plaintiff's Amended

---

[1] Defendant Marishia Wheeler remarried after commencement of this action, and her name is now Marishia Sandefur. (Doc. 170 at 1 n.1).

[2] Plaintiff's Amended Complaint and subsequent filings refer to both November 8, 2015 and November 22, 2015. Defendants consistently state that the November 2015 Incident occurred on November 22, 2015. The precise date of the November 2015 Incident is not material, as the parties are clearly referring to the same events. At his deposition, Plaintiff confirmed there is only one relevant incident in this time period. (Doc. 165-5 at 2).

Complaint pursuant to 28 U.S.C. § 1915(b)(1), Judge Perry dismissed Plaintiff's claims against

Dunklin County Jail, his official capacity claims against all Defendants, and other federal claims.

(Doc. 20 at 16-17; Doc. 21). Judge Perry allowed Plaintiff to proceed, however, on certain

excessive use of force, deliberate indifference, and failure to intervene claims.

On April 6, 2020, Judge Perry denied cross-motions for summary judgment filed by both

Plaintiff and Defendants. (Doc. 108). Consistent with this decision, the following claims remain

active pending resolution of the instant motions for summary judgment:

- Excessive use of force against Defendant Edwards ("Officer Edwards")

- Failure to intervene and deliberate indifference against Defendant Buchanan ("Officer Buchanan")

- Deliberate indifference against Defendant Holder ("Sheriff Holder")

- Excessive use of force against Defendant Sandefur ("Officer Sandefur")

Upon denying summary judgment, Judge Perry indicated that the case would "be set for trial

after the current national emergency because of the COVID[-]19 pandemic has ended." (*Id.* at

13). Plaintiff was appointed counsel (Doc. 126),[3] and the matter was reassigned to this Court on

June 10, 2021. (Doc. 130). The Court issued an Amended Case Management Order which

allowed the parties to complete additional discovery and file renewed motions for summary

judgment if appropriate. (Doc. 135).

On March 15, 2022, Sheriff Holder, Officer Edwards, and Officer Buchanan

(collectively, the "November 2015 Defendants") filed their Renewed Motion for Summary

Judgment and associated Statement of Uncontested Material Facts. (Docs. 163-65). Officer

---

[3] On February 14, 2022, after extensive briefing, the Court granted appointed counsel's Motion for Leave to Withdraw. (Doc. 158). Based on representations made in appointed counsel's *ex parte* filings, it became apparent that there had been a "fundamental breakdown in cooperation and communication" with Plaintiff. (*Id.* at 2-3). Plaintiff is therefore proceeding pro se.

Sandefur filed her Renewed Motion for Summary Judgment and Statement of Uncontroverted

Facts in Support on April 4, 2022. (Docs. 170-72). On April 6, 2022, "[i]n deference to

Plaintiff's pro se status and to ensure Plaintiff has sufficient time to respond," this Court granted

Plaintiff until April 27, 2022 to respond to both motions. (Doc. 173). On May 2, 2022, after

Plaintiff failed to timely file any response, the Court gave Plaintiff an additional 14 days but

indicated that "[i]f Plaintiff does not file a response by such deadline, the Court will rule on the

unopposed motions." (Doc. 175). The Court also ordered Defendants to "use best efforts to again

serve Plaintiff copies of their pending Motions for Summary Judgment and this Scheduling

Order." (*Id.*). The Court's extended deadline has now passed still without any response by

Plaintiff, and the Court must accordingly issue a decision on Defendants' unopposed motions for

summary judgment.

E.D. Mo. L.R. 4.01(E) provides that "[a]ll matters set forth in the moving party's

Statement of Uncontroverted Material Facts shall be deemed admitted for purposes of summary

judgment unless specifically controverted by the opposing party." Because Plaintiff has offered

no response whatsoever, he is deemed to have admitted all statements of uncontroverted material

facts offered by Defendants. (Docs. 165, 172). *See Johns v. City of Florissant*, No. 4:18-CV-

1121-AGF, 2020 WL 7695416, at *2 (E.D. Mo. Dec. 28, 2020) (deeming defendant's statement

of material facts admitted despite pro se status of plaintiff); *Clayton v. DeJoy*, No. 4:18-CV-1039

JAR, 2020 WL 6822641, at *1 n.3 (E.D. Mo. Nov. 20, 2020). The Court notes that pro se

litigants are not excused from complying with substantive and procedural rules. *Burgs v. Sissel*,

745 F.2d 526, 528 (8th Cir. 1984) (per curiam). Plaintiff's failure to respond, however, does not

mean this Court must automatically grant summary judgment in favor of Defendants. Instead,

Defendants must still establish that they are entitled to judgment as a matter of law. *Wagner v. Brown*, No. 4:15-CV-1277-JAR, 2017 WL 3433630, at *1 n.2 (E.D. Mo. Aug. 10, 2017).

## II.   LEGAL STANDARDS

Summary Judgment

Under Fed. R. Civ. P. 56(a), a movant is entitled to summary judgment if they can "show[] that there is no genuine dispute as to any material fact" and they are "entitled to judgment as a matter of law." *See Meier v. City of St. Louis*, 934 F.3d 824, 827-28 (8th Cir. 2019). This Court views the evidence in the light most favorable to the nonmovant. *Osborn v. E.F. Hutton & Co.*, 853 F.2d 616, 619 (8th Cir. 1988). The nonmovant, however, "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In considering whether Plaintiff can avoid summary judgment, this Court construes his filings liberally. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

42 U.S.C. § 1983

A valid claim under § 1983 includes two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged deprivation of that right was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). The statute offers a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 685 (1978). § 1983 is "not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989).

III.    **ANALYSIS**

Abandonment

At the outset, the Court finds that Plaintiff has abandoned all claims in this case. The

Eighth Circuit recognizes that "failure to oppose a basis for summary judgment constitutes

waiver of that argument." *Satcher v. Univ. of Ark. Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th

Cir. 2009). The Eighth Circuit recently affirmed that a plaintiff waives his or her claim by failing

to oppose arguments on summary judgment "because the non-moving party is responsible for

demonstrating any genuine dispute of material fact that would preclude summary judgment."

*Paskert v. Kemna-ASA Auto Plaza, Inc.*, 950 F.3d 535, 540 (8th Cir. 2020) (citation omitted); *see

also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Though Plaintiff is proceeding

pro se, he is "not excused from compliance with substantive and procedural law." *Brown v. Frey*,

806 F.2d 801, 804 (8th Cir. 1986).

The November 2015 Defendants filed their Renewed Motion for Summary Judgment on

March 15, 2022. (Doc. 163). Officer Sandefur filed her Renewed Motion for Summary Judgment

on April 4, 2022. (Doc. 170). This Court, acting on its own motion, granted Plaintiff multiple

extensions and set clear deadlines for responses. (Docs. 166, 173). On May 2, 2022, the Court

gave Plaintiff a final opportunity to respond within 14 days, and Plaintiff did not file any

response. (Doc. 175). As required by the Court, Defendants have delivered copies of their

motions and this Court's Scheduling Orders to Plaintiff by Certified U.S. Mail with return

receipts evidencing delivery. (Docs. 177-79).[4] It appears to the Court that Plaintiff has not

---

[4] On May 31, 2022, multiple Orders previously entered by this Court and mailed to Plaintiff's last known address were returned as undeliverable. (Docs. 180-83). The Court remains satisfied, however, that Plaintiff has had ample opportunity to prosecute his case. Plaintiff did not file any notice of change of address, and the parties have successfully served Plaintiff copies of their motions via certified mail at the same last known address. (Docs. 177-79). It appears that Plaintiff personally signed upon receiving one of the packages on May 13, 2022. (Doc. 179-1).

actively participated in this litigation since July 23, 2021, when he filed a Pro Se Motion for Memorandum and Order incorrectly claiming that he already won this case. (Doc. 138 at 3). In early 2022, the Court allowed Plaintiff's appointed counsel to withdraw after Plaintiff declined multiple opportunities to file any response or objection. (Docs. 144-49, 152-58). In these circumstances, the Court finds that Plaintiff has waived all of his claims by failing to oppose Defendants' motions for summary judgment. *Paskert*, 950 F.3d at 540. The Court will proceed in the alternative, however, and evaluate the merits of Defendants' arguments.

<u>November 2015 Defendants' Renewed Motion for Summary Judgment</u> (Doc. 163)

*Officer Edwards – Excessive Use of Force*

Officer Edwards was a corrections officer with the Dunklin County Sheriff's Department when the November 2015 Incident occurred. (Doc. 165 at ¶ 3). All parties agree that Officer Edwards tased Plaintiff in the back after placing Plaintiff in Room 125 (the "Holding Cell") (*Id.* at ¶ 20; Doc. 15 at 8). Plaintiff claims that this caused him to "hit[] the floor hard" and suffer "severe back injuries to lower and middle back area." (Doc. 15 at 8). Plaintiff brings a claim against Officer Edwards under 42 U.S.C. § 1983 for excessive use of force in violation of the United States Constitution. Officer Edwards seeks summary judgment on the grounds that his use of force was objectively reasonable.

Plaintiff was a pretrial detainee at Dunklin County. (Doc. 165 at ¶ 1; Doc. 165-1 at ¶ 9). Though Plaintiff cites the Eighth Amendment's prohibition on cruel and unusual punishment, § 1983 claims by pretrial detainees held in local jails are analyzed under the Fourteenth Amendment's Due Process Clause. *Holden v. Hirner*, 663 F.3d 336, 341 (8th Cir. 2011) (citation omitted); *see also City of Revere v. Mass. Gen. Hosp.* 463 U.S. 239, 244 (1983) (finding Eighth Amendment has no application until there has been a formal adjudication of guilt). The

Constitution affords pretrial detainees protections which are "*at least as great* as the Eighth Amendment protections available to a convicted prisoner." *Walton v. Dawson*, 752 F.3d 1109, 1117 (8th Cir. 2014) (citation omitted). Critically, pretrial detainees "cannot be punished at all." *Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015) (citation omitted).

The Supreme Court has held the Due Process Clause "protects a pretrial detainee from the use of excessive force that amounts to punishment," and the "appropriate standard for a pretrial detainee's excessive force claim is solely an objective one." *Id.* at 397-98 (citations omitted). The reasonableness of a particular use of force depends on the totality of the circumstances. The Eighth Circuit, following Supreme Court precedent, has encouraged courts to consider "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Ryan v. Armstrong*, 850 F.3d 419, 427 (8th Cir. 2017) (quoting *id.*); *see also Lombardo v. City of St. Louis*, 141 S. Ct. 2239, 2241 (2021).

On November 22, 2015, Officer Edwards entered Plaintiff's cell when Plaintiff would not line up for mealtime. (Doc. 165 at ¶ 10). In his deposition, Officer Edwards states that Plaintiff "g[o]t up in [his] face, and he bumped into [him]," at which point Officer Edwards told Plaintiff he was "going up front." (*Id.* at ¶ 10-11; Doc. 165-3 at 6). At this point, Plaintiff claims that he "grabbed the table to freeze [his] hands there to cover [himself]." (Doc. 165-5 at 3). Officer Edwards and Plaintiff eventually left the cell and proceeded to the Holding Cell, which also held other inmates. (Doc. 165 at ¶ 13-14).

Officer Edwards claims that Plaintiff "start[ed] trouble with" the other inmates as soon as he entered the Holding Cell. (*Id.* at ¶ 14; Doc. 165-3 at 7). Officer Edwards requested that

another officer retrieve the taser. (*Id.* at ¶ 16; Doc. 165-3 at 7). Officer Edwards insists that he

told Plaintiff to sit down more than 10 times, but Plaintiff refused to comply. (*Id.* at ¶ 17; Doc.

165-3 at 10). After shouting taser three times, Officer Edwards tased Plaintiff in the back. (*Id.* at

¶ 20; Doc. 165-3 at 7). Officer Edwards acknowledged that Plaintiff was not likely to attack him,

but also knew Plaintiff "was not going to comply." (Doc. 165-3 at 13). Officer Edwards

explained that he ultimately deployed the taser because Plaintiff was a "loose cannon," had

"bumped into [Officer Edwards]" previously, and Officer Edwards needed to "diffuse the

situation" and maintain "physical control." (*Id.* at 13, 15, 17; Doc. 165 at ¶ 27). Officer Edwards

expressed that he "knew [Plaintiff] was stronger" than him, as "he's a good sized guy." (*Id.* at

14). At his deposition, Plaintiff claimed he weighed 365 pounds at the time of the incident. (Doc.

165-5 at 9). Soon after the tasing, Officer Buchanan assisted Plaintiff with removing the prongs,

and Officer Edwards cleaned the site of Plaintiff's injury and placed a band-aid. (Doc. 165 at ¶

21; *id.* at 7). Plaintiff claims that he "crushed [his] back" and "almost busted [his] head against

the concrete slab," while Officer Edwards states that Plaintiff did not fall but merely "went

down" and "took a knee." (Doc. 165-5 at 7; Doc. 165-3 at 11).

Considering the totality of the circumstances, the Court finds that Officer Edwards is

entitled to summary judgment on Plaintiff's excessive use of force claim. The Eighth Circuit has

held that "prisoners have a clearly established right to be free from a Taser shock or its

equivalent in the absence of a security threat." *Brown v. City of Golden Valley*, 574 F.3d 491,

500 (8th Cir. 2009) (citation omitted). A review of precedent demonstrates that use of a taser is

justified "when there was a concern for the safety of the institution, the jailers, and the inmates."

*Id.* Numerous undisputed facts demonstrate that Officer Edwards acted objectively reasonably

under the circumstances:

- The entire incident began with Plaintiff refusing to line up for mealtime, getting into Officer Edwards' face, and bumping him. (Doc. 165 at ¶ 10).

- Upon entering the Holding Cell, Plaintiff began bullying other inmates and generally causing trouble. (*Id.* at ¶¶ 14-15).

- Officer Edwards instructed Plaintiff to sit down over 10 times, and Plaintiff refused. (*Id.* at ¶ 17).

- Officer Edwards audibly asked another officer to obtain the taser, and shouted a taser warning multiple times before deploying it. (*Id.* at ¶¶ 16-17).

- At the time of this incident, Plaintiff weighed 365 pounds, was bigger and stronger than Officer Edwards, and was not handcuffed. (*Id.* at ¶¶ 28-30).

- A nurse at Dunklin County visited on December 2, 2015 and prescribed Plaintiff Tylenol for 5 days for his back. (*Id.* at ¶ 39).

In short, a strong and unrestrained pretrial detainee bumped an officer, bullied other inmates, and refused to comply with numerous orders to sit down before being tased after multiple warnings. These facts demonstrate that Plaintiff presented a threat to the safety of the institution, officer, and other inmates.

The Eighth Circuit has "allowed the use of tasers on detainees in handcuffs in appropriate circumstances." *Franklin v. Franklin Cty., Ark.*, 956 F.3d 1060, 1062 (8th Cir. 2020) (citation omitted). In *Brossart v. Janke*, the Eighth Circuit approved the tasing of a handcuffed arrestee in the back of a police car who refused to move to the middle seat. 859 F.3d 616, 622 (8th Cir. 2017); *compare McManemy v. Tierney*, 970 F.3d 1034, 1038 (8th Cir. 2020) (discussing "key admission" that arrestee was not handcuffed when tased). In *Hollingsworth v. City of St. Ann*, the Eighth Circuit found that it was not clearly established that using a taser against an inmate who refused to change into a jumpsuit violated the inmate's constitutional rights. 800 F.3d 985, 988 (8th Cir. 2015).

Assessing the actions of Officer Edwards "from the perspective of a reasonable officer on the scene," the Court concludes that Officer Edwards' deployment of the taser did not constitute excessive force in violation of the Fourteenth Amendment's Due Process Clause. *Kingsley*, 576 U.S. at 397. Plaintiff was unrestrained, posed a threat to Officer Edwards along with other inmates, and refused to comply with numerous orders to sit down after having already "bumped" Officer Edwards. Considering the legitimate need for force, extensive efforts by Officer Edwards to obtain compliance, serious security threat posed by Plaintiff, and limited injuries suffered by Plaintiff, the Court finds that Officer Edwards' actions were objectively reasonable as a matter of law. Accordingly, the Court will grant summary judgment in favor of Officer Edwards on Plaintiff's excessive use of force claim.

*Officer Buchanan – Failure to Intervene & Deliberate Indifference*

Officer Buchanan was a deputy sheriff with the Dunklin County Sheriff's Department in November 2015. (Doc. 165 at ¶ 4). Plaintiff alleges that Officer Buchanan was "on the [scene]" when Officer Edwards tased him and "could have stopped the serious and outrageous assault" but instead "turned her head the other way." (Doc. 15 at 12). Plaintiff also contends that Officer Buchanan was deliberately indifferent to his serious medical needs.[5] For the reasons discussed below, both claims fail as a matter of law based on the undisputed facts.

The Eighth Circuit recognizes that a jail official violates the Due Process Clause when she is "deliberately indifferent to a substantial risk of serious harm to a pre-trial detainee and fails to protect the detainee." *Glaze v. Byrd*, 721 F.3d 528, 531 (8th Cir. 2013) (citation omitted). A failure to protect claim "requires a detainee to make two showings, one objective – that he

---

[5] The Court has liberally construed the Amended Complaint as raising this claim, consistent with Judge Perry's prior decision addressing Defendants' earlier motions for summary judgment. (Doc. 108 at 7).

faced a substantial risk of serious harm – and one subjective – that the official knew of and
disregarded the risk to the inmate's safety." *Edwards v. Byrd*, 750 F.3d 728, 733 (8th Cir. 2014);
*see also Blackmon v. Lombardi*, 527 F. App'x 583, 585 (8th Cir. 2013) (per curiam) (noting
failure to protect claim has both objective and subjective components).

 First, Plaintiff cannot succeed on his failure to protect claim against Officer Buchanan
because he cannot demonstrate that Officer Edwards used excessive force, as discussed above.
To establish his claim against Officer Buchanan, Plaintiff must show that she "observed or had
reason to know that excessive force would be or was being used." *Nance v. Sammis*, 586 F.3d
604, 612 (8th Cir. 2009) (citation omitted). But Plaintiff cannot make this objective showing
where Officer Edwards did not use excessive force in the first place. *See Hollingsworth*, 800
F.3d at 991 ("[B]ecause it was not clearly established McCallum's actions constituted excessive
force, a reasonable officer was not on fair notice that his failure to intervene when McCallum
deployed the Taser violated [plaintiff's] Fourth Amendment rights.").

 Second, the undisputed material facts establish that Officer Buchanan neither knew of nor
disregarded a substantial risk to Plaintiff's safety. Officer Buchanan only arrived at the Holding
Cell after Plaintiff was tased by Officer Edwards. (Doc. 165 at ¶¶ 23-25). At her deposition,
Officer Buchanan stated that she "didn't witness the tasering, [] didn't witness what prompted
the tasering or what happened beforehand." (Doc. 165-2 at 3). By failing to respond to the
Renewed Motion for Summary Judgment and Statement of Uncontested Material Facts, Plaintiff
has admitted that Officer Buchanan was not aware of any substantial risk to his safety. In short,
Officer Buchanan did not have the "duty, opportunity, or ability to intervene" before the tasing.
*Grider v. Bowling*, 785 F.3d 1248, 1253 (8th Cir. 2015) (citation omitted).

The facts also completely contradict Plaintiff's claim that Officer Buchanan was deliberately indifferent to his medical needs. Pretrial detainees are "protected under the Constitution from a state actor's deliberate indifference towards the inmate's serious medical needs." *Corwin v. City of Indep., Mo.*, 829 F.3d 695, 698 (8th Cir. 2016) (citation omitted). A deliberate indifference claim also has both objective and subjective components. *Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014) (citation omitted). As to the subjective component, Plaintiff cannot demonstrate that Officer Buchanan "actually knew of but disregarded his serious medical need," a mental state "akin to criminal recklessness." *Scott v. Benson*, 742 F.3d 335, 340 (8th Cir. 2014) (citation omitted). At his deposition, Plaintiff acknowledged that Officer Buchanan "is the one that took [the taser prongs] out." (Doc. 165-5 at 8). The undisputed material facts further indicate that Plaintiff received medical care shortly after the tasing incident. (Doc. 165 at ¶¶ 38-39). Plaintiff has not come forward showing there is a genuine issue for trial on whether Officer Buchanan was deliberately indifferent to his serious medical needs. *See Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). Accordingly, the Court will grant summary judgment in favor of Officer Buchanan on all claims raised by Plaintiff.

*Sheriff Holder – Deliberate Indifference*

Plaintiff alleges that Sheriff Holder, in his capacity as Sheriff of Dunklin County, repeatedly exhibited deliberate indifference towards Plaintiff's serious medical needs. (Doc. 15 at 10-11). Plaintiff specifically claims that he requested medical attention but Sheriff Holder simply responded that he "doesn't care about [Plaintiff's] pains" and Plaintiff should "lay the fuck down and shut up before [he] comes up missing." (*Id.* at 10). As indicated above, the Constitution protects pretrial detainees from a state actor's deliberate indifference to their serious

medical needs. *Corwin*, 829 F.3d at 698 (citation omitted). A deliberate indifference claim has both objective and subjective components. First, Plaintiff must demonstrate that he had an objectively serious medical need. "To be objectively serious, a medical need must have been diagnosed by a physician as requiring treatment or must be so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Jackson*, 756 F.3d at 1065 (internal quotations omitted). Second, Plaintiff must establish that Sheriff Holder "actually knew of but deliberately disregarded his serious medical need," which requires a mental state "akin to criminal recklessness." *Id.* (citation omitted); *see also Ryan v. Armstrong*, 850 F.3d 419, 425 (8th Cir. 2017) (applying criminal recklessness standard to subjective component of deliberate indifference claim).

The Court assumes without deciding that Plaintiff can satisfy the objective element and in fact had an objectively serious medical need. He was tased by Officer Edwards and alleges in the Amended Complaint that he screamed out for medical attention. *See Armstrong*, 850 F.3d at 425 (district court reasonably assumed serious medical need where inmate screamed and yelled for hours). But Plaintiff cannot demonstrate that Sheriff Holder – who held a supervisory position as Sheriff (Doc. 165 at ¶ 2) – actually knew of and disregarded this need. The Eighth Circuit has recognized that a supervisor can only be liable under 42 U.S.C. § 1983 for deliberate indifference when they are "personally involved in the situation or when the supervisor's corrective inaction constitutes deliberate indifference towards the violation. The supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he or she] might see." *Wagner v. Jones*, 664 F.3d 259, 275 (8th Cir. 2011) (citation omitted).

Plaintiff has not alleged that Sheriff Holder was present for the November 2015 Incident. Sheriff Holder "did not know of [Plaintiff], never met him, never spoke to him nor received any

correspondence or letters from him." (Doc. 165 at ¶ 35; Doc. 165-4 at 8). Sheriff Holder only

became aware of the November 2015 Incident after Plaintiff filed this lawsuit. (*Id.* at ¶ 37; Doc.

165-4 at 9). In short, Sheriff Holder had no personal involvement with Plaintiff.

There is no evidence to suggest, moreover, that Sheriff Holder practiced corrective

inaction which amounted to deliberate indifference. The undisputed material facts show Dunklin

County had a medical services contract with Advanced Correctional Health Care ("ACH"). (Doc.

165 at ¶ 32-33; Doc. 165-1 at ¶¶ 6-7). Plaintiff made a sick call request on November 30, 2015,

stating that he "got tased the other day [and] fell" and his "back is hurting." (Doc. 165-1 at 3, 6).

Plaintiff promptly received care from an ACH nurse on December 2, 2015. (Doc. 165 at ¶ 38).

The nurse prescribed Tylenol for Plaintiff's back pain. (*Id.* at ¶ 39). Plaintiff was released from

Dunklin County eight days later. (*Id.* at ¶ 40). Based on the undisputed material facts before the

Court, a reasonable factfinder could not conclude that Sheriff Holder was deliberately indifferent

to Plaintiff's serious medical needs. The Court will accordingly grant summary judgment in

favor of Sheriff Holder.

<u>Officer Sandefur's Renewed Motion for Summary Judgment</u> (Doc. 170)[6]

Plaintiff alleges that Officer Sandefur used excessive force in violation of the Eighth

Amendment to the United States Constitution during the October 2016 Incident. Plaintiff

specifically claims that Officer Sandefur pushed him to the booking room floor and "began to

push and swing at" him before placing him in a padded cell. (Doc. 15 at 9). On December 9,

2015, Plaintiff pled guilty to a Class C felony and received a Suspended Execution of Sentence

---

[6] Also pending before the Court is Officer Sandefur's Motion to Determine the Sufficiency of Plaintiff's Responses
to Defendant Sandefur's Requests for Admission. (Doc. 159). Because the Court is granting summary judgment in
favor of Officer Sandefur on all claims raised by Plaintiff, it will deny this motion as moot.

for a five-year prison sentence. (Doc. 172 at ¶¶ 2-4). At the time of the October 2016 Incident, Plaintiff was confined to Dunklin County on an arrest warrant relating to a suspected violation of his supervised probation. (*Id.* at ¶¶ 6-8). Because Plaintiff was a convicted and sentenced prisoner at the time of the October 2016 Incident, this Court analyzes his excessive force claim under the Eighth Amendment.[7]

The Supreme Court has explained that "whenever prison officials stand accused of using excessive force in violation of the Cruel and Unusual Punishment Clause, the core judicial inquiry is . . . whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *see also Whitley v. Albers*, 475 U.S. 312, 319 (1986) (internal quotations omitted) ("After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment."). In applying this test, the Eighth Circuit has suggested that courts consider "the need for the application of physical force; the relationship between the need for physical force and the amount of force applied; and the extent of injury suffered by the inmate." *Jones v. Shields*, 207 F.3d 491, 495 (8th Cir. 2000) (citation omitted).

Officer Sandefur worked as a jailer at Dunklin County from February 2015 to December 2019. (Doc. 172 at ¶ 1). Officer Sandefur was working the 10:00 P.M. – 6:00 A.M. shift on the night of the October 2016 Incident. (*Id.* at ¶ 19). That evening, another officer escorted Plaintiff to the booking room so that Plaintiff could write a statement regarding an altercation with another inmate. (*Id.* at ¶ 45). After Plaintiff completed his written statement, Officer Sandefur ordered him to enter Cell 118, which is adjacent to the booking room. (*Id.* at ¶¶ 46-47). Plaintiff did not comply despite multiple orders by Officer Sandefur. (*Id.* at ¶¶ 48-50). Instead, Plaintiff

---

[7] This Court would reach the same conclusion if it were to treat Plaintiff as a pretrial detainee and apply the standard for excessive force claims raised under the Fourteenth Amendment's Due Process Clause.

intentionally handcuffed himself to a metal bar in the booking room and sat on a stool next to Cell 118. (*Id.* at ¶¶ 51-57; Doc. 160-1 at 7). An altercation ensued as Plaintiff physically resisted Officer Sandefur's attempts to unlock the handcuffs, and Plaintiff still had one free hand during this altercation. (*Id.* at ¶¶ 58-67).

Plaintiff slid off the stool, and Officer Sandefur eventually unlocked the handcuffs. (*Id.* at ¶¶ 69-70). Officer Sandefur ordered Plaintiff to enter Cell 118, but Plaintiff refused and stuck his chest out toward Officer Sandefur in an aggressive manner. (*Id.* at ¶¶ 73-74). Officer Sandefur pushed Plaintiff into Cell 118, but Plaintiff resisted by stiffening his body and placing his foot in the doorjamb. (*Id.* at ¶¶ 76-78). Officer Sandefur eventually got Plaintiff into Cell 118 and locked the door without ever punching, hitting, or kicking him. (*Id.* at ¶¶ 79-81).

These undisputed facts undoubtedly demonstrate that Plaintiff cannot succeed on his excessive force claim against Officer Sandefur as a matter of law. Officer Sandefur applied the limited force necessary to restore discipline and did not maliciously or sadistically cause harm. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). Plaintiff clearly posed a threat to Officer Sandefur and the general orderly operation of the facility when he refused to enter Cell 118, handcuffed himself to the booking desk, and again refused to enter Cell 118 while physically resisting Officer Sandefur's efforts. *See Perry v. Martin*, No. 4:10-CV-2436 SNLJ, 2013 WL 6331474, at *3-4 (E.D. Mo. Dec. 5, 2013) (granting summary judgment on similar claim where plaintiff failed to respond to motion or dispute material facts). Officer Sandefur's use of force was necessary and appropriate given her objectives and Plaintiff's recalcitrance. The fact that one of Plaintiff's hands was cuffed, by his own doing and contrary to Officer Sandefur's orders, did not preclude Officer Sandefur from using appropriate force. *See United States v. Pope*, 910 F.3d 413, 417 (8th Cir. 2018) ("Handcuffs limit but do not eliminate a person's ability to perform harmful

acts."); *see also Tubbs v. Tarrant Cty. Sherriff's Dept.*, No. 4:97-CV-696-A, 1998 WL 50462, at *1 (N.D. Tex. Jan. 20, 1998) (holding officers did not use excessive force where inmate handcuffed himself to desk).

The Court further notes that Plaintiff has not identified any injuries resulting from the October 2016 Incident. The Supreme Court has acknowledged that an "inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Wilkins*, 559 U.S. at 38 (internal quotations omitted). Considering all the undisputed facts before the Court, a reasonable factfinder could not conclude that Officer Sandefur applied force "maliciously or sadistically to cause harm." *Hudson*, 503 U.S. at 6-7 (1992). The Court will accordingly grant Officer Sandefur's Renewed Motion for Summary Judgment.

In the alternative, the Court also finds that Plaintiff has not administratively exhausted his claims relating to the October 2016 Incident. Pursuant to the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has recognized that the PLRA exhaustion requirement applies to "particular episodes" including allegations of excessive use of force. *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The exhaustion requirement is "mandatory." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *see also Muhammad v. Mayfield*, 933 F.3d 993, 1000 (8th Cir. 2019).

The "boundaries of proper exhaustion depend on the prison's specific administrative requirements." *Townsend v. Murphy*, 898 F.3d 780, 784 (8th Cir. 2018) (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)). At Dunklin County, the Inmate Grievance Process requires that an

inmate (i) complete and sign a grievance form; (ii) appeal if necessary by resubmitting the grievance to the Jail Administrator; and (iii) file a final appeal if necessary with the Sheriff of Dunklin County. (Doc. 172 at ¶¶ 82-87; Doc. 172-5 at 3). Every grievance filed by an inmate is saved in their jail file. (*Id.* at ¶ 88). Plaintiff filed 31 grievances between August 11, 2016 and November 21, 2016. (*Id.* at ¶ 89). None of these grievances concerned the October 2016 Incident. (*Id.* at ¶¶ 89-90). Therefore, Plaintiff failed to exhaust his administrative remedies relating to the October 2016 Incident and his claims are subject to dismissal under the PLRA. *See Muhammad*, 933 F.3d at 1002-03 (holding plaintiff's exhausted grievances did not relate to, and therefore did not exhaust, plaintiff's federal claims).

*Qualified Immunity*

Each Defendant contends they are entitled to qualified immunity. (Doc. 164 at 8-9; Doc. 171 at 18-22). Qualified immunity "protects government officials performing discretionary functions from liability for damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Jenkins v. Univ. of Minn.*, 838 F.3d 938, 944 (8th Cir. 2016) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (2016)); *see also Malley v. Briggs*, 475 U.S. 335, 341 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"). A claim of qualified immunity requires a two-step inquiry: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right; and (2) whether that right was clearly established at the time of the defendant's alleged misconduct. *Santiago v. Blair*, 707 F.3d 984, 989 (8th Cir. 2013) (citation omitted). Defendants "are entitled to qualified immunity unless the answer to both of these questions is yes." *McCaster v. Clausen*, 684 F.3d 740, 746 (8th Cir. 2012) (citation omitted).

After careful consideration, the Court has determined that Plaintiff cannot make out a claim for violation of a constitutional or statutory right by any Defendant. Accordingly, Defendants are entitled to qualified immunity on all claims raised by Plaintiff, and summary judgment in favor of Defendants is appropriate. *See Williams v. Mannis*, 889 F.3d 926, 931 (8th Cir. 2018) (citation omitted) ("Qualified immunity is appropriate where no reasonable fact finder could conclude that the facts when viewed in a light most favorable to the plaintiff show that the officers' conduct violated a clearly established constitutional right.").

## IV.    CONCLUSION

Plaintiff filed this suit concerning the November 2015 Incident and October 2016 Incident in March 2018. After substantial developments and a delay caused by the COVID-19 pandemic, Plaintiff ceased participating in this litigation at some point in the second half of 2021. Plaintiff has failed to offer any response to Defendants' Renewed Motions for Summary Judgment. (Docs. 163, 170). Consistent with Eighth Circuit precedent, the Court finds that Plaintiff has therefore waived his claims. The Court has proceeded in the alternative, however, and substantively considered Defendants' arguments. Because Plaintiff did not file any response, Defendants' Statements of Uncontroverted Material Facts were deemed admitted pursuant to E.D. Mo. L.R. 4.01(E).

Based on the undisputed facts before the Court, a reasonable factfinder could not conclude that Plaintiff's constitutional rights were violated during the October 2015 Incident. Officer Edwards tased Plaintiff once after Plaintiff bullied other inmates and refused multiple orders to sit down all while posing a substantial threat to institutional safety. Officer Buchanan arrived after the tasing occurred and assisted in removing the prongs from Plaintiff's back. Plaintiff received medical care from an ACH nurse shortly after placing a request for medical

- 19 -

services. Sheriff Holder had absolutely no involvement with the incident, nor did he have any relationship with Plaintiff. In these circumstances, Plaintiff has no plausible claim that any of the November 2015 Defendants are liable under 42 U.S.C. § 1983 for violating his constitutional rights.

A reasonable factfinder also could not find that Officer Sandefur used excessive force during the October 2016 Incident. Plaintiff refused various orders before handcuffing himself to the booking area while maintaining one free hand. Officer Sandefur applied a limited amount of force necessary to restore order and did not act maliciously or sadistically to cause harm, nor did she cause Plaintiff meaningful injuries. Plaintiff's claim against Officer Sandefur is also subject to dismissal under the PLRA because Plaintiff failed to exhaust his administrative remedies. Finally, the Court holds that all Defendants are entitled to qualified immunity because they did not violate Plaintiff's clearly established constitutional rights.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Marishia Sandefur's Motion to Determine the Sufficiency of Plaintiff's Responses to Defendant Sandefur's Requests for Admission (Doc. 159) is **DENIED as moot.**

**IT IS FURTHER ORDERED** that Defendants Bob Holder, Allen Edwards, and Pam Buchanan's Renewed Motion for Summary Judgment (Doc. 163) is **GRANTED**.

**IT IS FINALLY ORDERED** that Defendant Marishia Sandefur's Renewed Motion for Summary Judgment (Doc. 170) is **GRANTED**.

A separate Judgment will accompany this Memorandum and Order.

Dated this 21st day of June, 2022.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE